POPE *v.* KNOXVILLE INDUSTRIAL BANK, INC.

(*Knoxville,* September Term, 1938.)

Opinion filed November 25, 1938.

462

HAROLD WIMBERLY and W. W. KENNERLY, both of Knoxville, for appellant.

GREEN, WEBB, BASS & McCAMPBELL, of Knoxville, for appellee.

Mr. Justice DeHaven delivered the opinion of the Court.

The original bill in this cause was filed in the Chancery Court of Knox County on August 10, 1936, and on August 18, 1936, the same was sustained as a general creditors' bill, and all parties having claims against defendant, Knoxville Industrial Bank, Inc., were enjoined from prosecuting the same except in this cause.

The City of Knoxville filed its intervening petition averring, in substance, that defendant was the owner of "certain personal property," within the corporate limits of the city, duly assessed for municipal taxes for the year 1936, and that by reason of said assessment, duly levied, defendant is now indebted to petitioner in the sum of $503.50, which with penalty and interest amounts to the total sum of $510.41. It is further averred:

"Said claim is secured by a tax lien upon said personal property, which is superior and prior to all other liens and claims against said defendant and/or said property, except the tax claims and liens of the State of Tennessee and Knox County."

The prayer of the petition is that petitioner be accorded a decree against defendant for the total amount of the tax, penalty and interest due, "and that same be declared a prior, superior and preferred claim and that same be decreed to be secured by a prior and superior lien on said personal property of said defendant."

In a report, the clerk and master, while admitting the petitioner's claim as a general creditor, denied the priority on the ground that it was not shown that a distress warrant was issued and served. Petitioner duly excepted to the report, which exceptions were overruled by the

chancellor and the report of the clerk and master was confirmed. From this decree petitioner has appealed to this court and assigned errors.

■ The first question made is that petitioner is entitled to have its claim for personal property taxes recognized as a preferred claim. Petitioner bases its claim for preference on the contention that such taxes are secured by a lien under section 1329 of the Code, which is as follows:

"The assessed taxes on all real estate, personalty, railroad, telegraph, and telephone, and other public service companies, and all damages and costs accruing thereon, shall be and remain a first lien upon such property, from the tenth of January of each and every year, for the taxes of that year."

Under this section, the lien extends in favor of the State, counties, and cities. *Edmonson* v. *Walker*, 137 Tenn., 569, 195 S. W., 168. In *Johnson City* v. *Press, Inc., et al.*, 171 Tenn., 80, 100 S. W. (2d), 657, it was held that the legislative declaration found in section 1329 of the Code (Ch. 602, Acts 1907), to the effect that assessed taxes on all "real estate, personalty, railroad," etc., shall be and remain a first lien upon such property, "cannot properly be construed to mean that under a blanket assessment of personal property in general terms of money the tax collecting officials may follow the property, on which the general assessment is based, into the broad field of barter and trade, take it from innocent purchasers, and subject it to the payment of the taxpayer's liability." [Page 85.]

■■ The receiver appointed in a general creditor's proceeding is not an innocent purchaser of the assets of the insolvent estate. The appointment of a receiver

neither settles nor prejudices rights (*Roberson* v. *Roberson,* 71 Tenn. (3 Lea), 50, 52; *Troughber* v. *Akin,* 109 Tenn., 451, 73 S. W., 118), but is simply a means by which primary rights may be more efficiently preserved and enforced in judicial proceedings. In *Tradesman Publishing Co.* v. *Knoxville Car Wheel Co.,* 95 Tenn., 634, 635, 669, 32 S. W., 1097, 1105, 31 L. R. A., 593, 49 Am. St. Rep., 943, the court quotes with approval as follows from *Union Nat. Bank of Chicago* v. *Kansas City Bank,* 136 U. S., 223, 10 S. Ct., 1013, 34 L. Ed., 341:

"A receiver derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed; and the utmost effect of his appointment is to put the property from that time into his custody as an officer of the court for the benefit of the parties ultimately proved to be entitled, but not to change the title, or even right of possession, in the property."

Title is not changed by placing property in the hands of a receiver. *Wall* v. *Pulliam,* 52 Tenn. (5 Heisk.), 365, 370; *Lee* v. *Cone,* 44 Tenn. (4 Cold.), 392, 395.

In 53 C. J., 100-101, it is stated:

"A receiver is in no sense a *bona fide* purchaser, and he can acquire no other, greater, or better interest than the debtor had in the property. To this extent he has been held to stand in the shoes of the debtor; he has the same right which the latter would have had, and can set up no rights against claims which the debtor could not have set up."

In *Edmonson* v. *Walker, supra,* it was held that no lien for taxes exists against personal property without the issuance of a distress warrant, as provided in Thomp-

son's Shannon's Code, sections 876, 877 (Ch. 602, Acts 1907).

Section 1574 of the Code of 1932, which brought forward section 3, Chapter 77, Acts 1923, with slight modification (and substantially the same as section 876 of Shannon's Code), is as follows:

"All taxes remaining delinquent for thirty days shall immediately be collected by the county trustee, by distress and sale of any personal property liable therefor; and the tax books in the hands of said trustee and the delinquent lists to be furnished by him to deputy trustees, or to the sheriffs and constables, shall have the force and effect of a judgment and execution from a court of record, and shall be ample authority for the officers having such taxes for collection to distrain and sell a sufficient amount of the personal property of any delinquent to satisfy his taxes, interest, penalties, and costs."

Section 1574 of the Code must be construed *in pari materia* with section 1329, which fixes a lien on real estate, personal property, etc., for taxes, and which lien, as held in *Edmonson* v. *Walker, supra,* extends in favor of the State, counties, and cities. It is our opinion that section 1329 creates the lien for taxes and section 1574 provides a method for the enforcement of the lien. This being true, then a lien in favor of the State, counties, and cities for taxes is not dependent for its existence upon the issuance of a distress warrant, where innocent holders are not involved.

In *State ex rel.* v. *Collier,* 160 Tenn., 403, 23 S. W. (2d), 897, the contention of Collier to the effect that the issuance and *nulla bona* return of a distress warrant was essential to the maintenance of a tax bill against land was rejected by this court.

Section 8286 of the Code is as follows:

*"Account, how to be taken.*—In order to ascertain the fund to be distributed among the creditors, the clerk shall deduct from the whole estate:

"(1) All fees and commissions due in the administration thereof, including the allowance to the administrator or executor.

"(2) Claims for funeral expenses.

"(3) Debts and arrearages due to the state, and the general government.

"(4) And such articles as are by law exempt from execution, if such belong to the estate."

In *Edmonson* v. *Walker, supra,* 137 Tenn., 587, the court said, *inter alia*:

"There can be no doubt about the proposition that this act in section 4090 [Shannon's Code] does undertake to fix and settle all priorities as between creditors, as by its very terms it says that, in order to ascertain the fund to be distributed among the creditors, certain debts only shall be first paid. Neither county nor city taxes are provided for."

In *Kinsey* v. *McDearmon, Adm'r,* 45 Tenn. (5 Cold.), 392, 399, the court said:

"[*Fields v.*] *The Creditors of Wheatley,* 33 Tenn. (1 Sneed), 351, that 'the statutes regulating the administration of insolvent estates, were not intended, and could not be construed, to affect, in the remotest degree, liens acquired in the lifetime of the deceased insolvent. They contemplate only a ratable division of the assets, which by law, are subject to the satisfaction of the general creditors.' And this opinion has been approved since the adoption of the Code, in the case of *Winston, Adm'r, etc.,* v. *Eldridge.* In this case, the learned Judge who delivered the opinion of the Court says: 'We have settled, in the

case of 33 Tenn. (1 Sneed), 354, that the statutes regulating the distribution of insolvent estates, were not intended to affect liens upon any part of the property of the estate, acquired and fixed in the lifetime of the deceased. These rights continue as if there had been no death, and no statutes on the subject, so far as their priority of satisfaction is concerned. The property on which the lien exists, goes into the estate encumbered with the lien debts. Or, more correctly speaking, it is only what remains after the discharge of the encumbrance, that goes into the fund for distribution.''

■ We are unable to agree that petitioner's lien for taxes was lost because no distress warrant was issued, or that it was adversely affected, or that it was destroyed by the sustaining of the bill in this cause as a general creditors' bill and the appointment of a receiver. We think the learned chancellor was in error in denying priority in payment of the tax debt due petitioner. The first assignment of error is sustained.

■ ■ It is next complained that the chancellor was in error in not allowing interest and penalties on the claim of petitioner up to the time of distribution. The chancellor allowed interest and penalties up to the time of the filing of the petition.

It is the general rule that in receivership cases claims having a priority are entitled to payment of interest until the decree of distribution. 53 C. J., 235. We think the petitioner is entitled to interest down to the date of the decree of distribution. Penalties will be allowed up to the filing of the bill.

The results are that the decree of the chancellor must be reversed and the cause remanded. The costs of this appeal will be paid out of the assets of the insolvent estate.