**C.H. BUTCHER, III,
Plaintiff-Counter-Defendant-Appellee,**

v.

**Lewis S. HOWARD, Trustee for the
C.H. Butcher, III Trust, Defendant,**

**and**

**John D. Kreis, Receiver of the C.H.
Butcher, III Trust,
Defendant-Counter-Plaintiff-Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

April 18, 1986.

Permission to Appeal Denied by
Supreme Court Sept. 8, 1986.

Motion to Reconsider Denied Nov. 3, 1986.

John C. Speer, John S. Hicks, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Knoxville, for defendant-counter-plaintiff-appellant.

Michael G. Hatmaker, Jeffrey L. Hall, Jacksboro, W. Zane Daniel, David L. Buuck, Daniel, Claiborne, Oberman & Buuck, Knoxville, for plaintiff-counter-defendant-appellee.

## OPINION

FRANKS, Judge.

The dispositive issue on appeal is whether the filing of a creditor's bill and the appointment of a receiver of trust estate property take precedence over a deed conveying a trust property made before, but not registered until after, the appointment of the receiver.

On July 1, 1976, C.H. Butcher, Jr., established an irrevocable trust, known as the C.H. Butcher, III Trust, with Cecil H. Butcher, III, as beneficiary who, at age 25, was to be paid "the principal of the trust and accumulations of income."

On June 25, 1981, C.H. Butcher, Jr., informed the trustee, Lewis Howard, that Butcher wanted certain lands, located in Union County known as Red Gate Farm, to be conveyed to C.H. Butcher, III, as a gift for the son's birthday. The trustee directed an associate in his law firm, Wendell Thomas, to prepare the deed, which was typed by Arlene Fisk, a secretary in the office. As originally prepared, the deed contained a property description for only one tract of the three tracts comprising Red Gate Farm.

On June 26, 1981, the birthday of C.H. Butcher, III, an employee of C.H. Butcher, Jr., delivered a deed to the Union County Bank, the situs of the birthday party. Butcher, III perused the deed briefly and passed it around the room. The document was ultimately handed to C.H. Butcher, Sr., who gave it to Emma Bailey, a bank employee, with instructions "put this up for me." The document was placed in a lock box at the bank.

At trial, the trustee, Howard, testified at the time the deed was prepared he knew it was "incomplete" in that it conveyed only one of three tracts comprising the farm and, while "what [he] intended to do was to convey Red Gate Farms", it was his "understanding" that the deed would not be recorded. Accordingly, after the initial deed was prepared, Howard prepared two additional deeds conveying the additional two tracts, which were the balance of the

farm. These deeds were dated June 26, 1981, but were actually prepared on July 8.

Howard then sent a memorandum to David Crabtree, the accountant for C.H. Butcher, Jr., with the two additional deeds attached. The memorandum stated the two deeds, combined with the first deed, transferred all of Red Gate Farm to C.H. Butcher, III. The memo and the deeds were returned to Howard with the memo bearing the inscriptions "Forget this" and "CH—Don't you think we ought to have Ted look at the tax consequences of this. D [unintelligible] C." Howard testified the handwritten note was in the handwriting of David Crabtree and that from that time he, as trustee, regarded the conveyance as a "dead issue, because it wasn't accomplished."[1]

From the time of the delivery of the deed in June, 1981, until the appointment of a receiver for the trust in September, 1983, Red Gate Farm continued to be treated as trust property. Butcher, III, testified he paid no taxes or insurance on the farm during that period and also entered into a contract with the trust to manage the property.

In the summer of 1983, a creditor of the C.H. Butcher, III Trust filed suit in the Chancery Court of Knox County, seeking a declaration of the trust's insolvency and appointment of a receiver. During the pendency of that action, attorney G.W. Ridenour, with the approval of Butcher, III, approached Howard to discuss the possibility of Butcher, III purchasing the Red Gate Farm from the trust and a consideration of $750,000.00 was mentioned. No agreement was made.

On September 8, 1983, the Chancery Court of Knox County declared the trust insolvent and appointed John D. Kreis as receiver. On October 1, 1983, C.H. Butcher, Sr., called a trusted friend to the bank, retrieved the deed from the safety deposit box, and requested the friend to take the deed to the courthouse where it was recorded. The legal description in the deed, as recorded, contained all three tracts comprising the Red Gate Farm. On October 3, attorney Ridenour showed Howard a copy of the recorded deed, and Howard testified he suddenly "realized that there had been 2 tracts added to this property."

The instant action was filed on November 21, 1983, to "quiet title and/or for declaratory relief," averring the deed of record was delivered to Butcher, III on June 26, 1981 and he held a fee simple title to Red Gate Farm. Following a bench trial, the chancellor held that the preponderance of the evidence established that the deed as recorded was, in fact, delivered to Butcher, III on June 26, 1981.

The receiver argues that, assuming *arguendo*, the altered deed was delivered to Butcher, III in its altered condition, it is nevertheless ineffective against the receiver "because it was not recorded in the Union County Register of Deeds Office until after the appointment of the receiver." The receiver relies on T.C.A., § 66–26–103:

> Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

■ While a receiver stands in the shoes of the debtor, *Pope v. Knoxville Industrial Bk., Inc.*, 173 Tenn. 461, 121 S.W.2d 530 (1938), and may not himself enjoy the status of a creditor, the representation of all creditors is among his functions. *See Paine v. Fox et al.*, 172 Tenn. 290, 302, 112 S.W.2d 1 (1938). As noted in 75 C.J.S., *Receivers*, § 143, "in asserting his right to collect or hold assets as those of the insolvent, [the receiver] may be said to claim under the latter's right and so to represent his interest; but, in a sense, or for some purposes, he represents the creditors as well...."

---

1. This, apparently, met with the approval of C.H. Butcher, Jr., who did not testify in this case.

A duly appointed receiver holds property *in custodia legis* [in custody or keeping of the law], *Tradesman Publishing Co. v. Car Wheel Co.*, 95 Tenn. 634, 32 S.W. 1097 (1895), and, in a creditor's action, the receiver holds the property for the benefit of the creditors. Butcher, III contends, however, that the term "creditors" in T.C.A., § 66–26–103, encompasses only judgment creditors, relying on *Chester v. Greer*, 24 Tenn. (5 Humph.) 25 (1844). This is the general rule; however, the Supreme Court in *Hervey & New v. Champion*, 30 Tenn. 568 (1851), established an exception in the case of an attaching creditor, since, the court observed, "the lien acquired by the attachment is regarded as of equal force with the lien of a judgment or execution." *Id.*, at 571. This is a well-settled rule of property law in this jurisdiction. In *Moore v. Walker*, 178 Tenn. 218, 156 S.W.2d 439 (1941), A.E. Moore had conveyed to his son, Keel Moore, by deed, certain land on January 31, 1935. On February 5, 1935, John T. Walker filed an "attachment bill" alleging A.E. Moore was about to fraudulently dispose of his property, and the court granted an attachment on Moore's land described in the warranty deed by Moore to his son. On February 7, Keel Moore registered the deed from his father. The court held the lien of attachment took precedence over the deed delivered but not recorded until after the levy.

The extraordinary process of appointing a receiver to take possession of the debtor's property for the benefit of creditors is of similar force and effect of an attachment and falls within the attachment exception to the general rule. In this regard, we adopt the rationale convincingly stated in *Camerer v. California Savings & Comm'l Bank*, 4 Cal.2d 159, 48 P.2d 39 (1935):

It is fundamental that a liquidating receiver represents the interests of depositors and creditors. It is equally fundamental that as a general rule, the receiver takes the insolvent's property subject to all liens, defenses, and equities to which it is subject in the hands of the insolvent, and that he administers on behalf of creditors no greater title or estate than the debtor had. [Citations omitted.] Without denying the validity of this general rule, there are certain situations where the receiver is permitted to assert rights and defenses not available to the insolvent. Thus, it is held that although the insolvent debtor cannot set aside a transfer in fraud of his creditors ... the receiver acting for the creditors may attack it.... *It is also held that although an unrecorded conveyance or mortgage is valid as against the grantor or mortgagor, his receiver prevails over the holder under the unrecorded instrument under statutes which provide that unrecorded transfers are void as to creditors.* [Citations omitted.] The justice and equity of such exceptions to the general rule that the receiver has only the rights of the insolvent debtor are apparent.

48 P.2d at 44–5 [emphasis supplied]; *also see First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339 (Tex.1976). *Accord* as to personalty, *Barber v. Reina Nash Motor Co.*, 72 Wyo. 65, 260 P.2d 928 (1953).

We do not reach the remaining issues and, for the foregoing reasons, reverse the judgment of the chancery court and remand for the entry of a judgment placing the trust properties in possession of the receiver for the benefit of the trust estate's creditors. Costs incurred on appeal are assessed to the appellee.

SANDERS and GODDARD, JJ., concur.